In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-2541

PAOLO S. RIBAUDO,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2810—**Morton Denlow**, *Magistrate Judge.*

ARGUED JULY 11, 2006—DECIDED AUGUST 11, 2006

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Paolo Ribaudo appeals from the district court's order affirming the decision of the Commissioner of Social Security denying his claim for social security benefits. Because the district court did not adequately explain its conclusion that Ribaudo's herniated disc did not meet or equal a listed impairment, we vacate and remand the district court's decision.

## Background

Ribaudo, who is an Italian citizen and does not speak English, injured his back while working in construction

in the United States. He was initially treated by Dr. Jay Levin, an orthopedic surgeon, who diagnosed a herniated nucleus pulposus, a type of herniated disc, on the basis of an MRI. The MRI also revealed that the herniated disc was "displacing both the right L4 and L5 nerve roots." Dr. Levin reported that surgery was necessary to correct the problem and "decompress the nerve roots." This surgery was performed in March 1999, but it was not successful. Ribaudo continued to complain of lower back pain that radiated down to his right leg. He also complained of tingling and numbness in his right leg, difficulty walking, and difficulty standing or sitting for extended periods of time. Dr. Levin treated Ribaudo through May 2000, and his reports reveal that Ribaudo experienced tenderness in the back, pain when flexing forward, and pain during straight-leg raising tests. He also noted that Ribaudo had difficulty walking on his right heel, and had decreased sensation in the right calf area. Dr. Levin believed that Ribaudo's continuing symptoms were caused either by a recurrence of the herniated disc or by scar tissue from his surgery. In February 2000, one of Dr. Levin's partners gave Ribaudo an epidural steroid injection in an effort to relieve his pain. Nonetheless, Dr. Levin concluded, in a letter to the insurance company that provided Ribaudo's workers' compensation benefits, that Ribaudo could return to work at the medium/heavy level with a maximum weight-lifting restriction of fifty pounds.

Another examining physician, Dr. Jit Kim Lim, a neurological surgeon, whom Ribaudo consulted in September 1999, took a somewhat less optimistic view of Ribaudo's condition. Dr. Lim diagnosed Ribaudo with sciatic pain and recommended that Ribaudo have additional surgery on his back, but there is no evidence that this surgery ever took place. He observed that Ribaudo's gait was abnormal and that Ribaudo presented with a "stooping posterior" due to his lower back and leg pain. He also noted significant

limitations on the range of motion in his spine and pain during straight-leg raising tests.

In May 2000, Ribaudo was evaluated by the HealthSouth Rehabilitation Center, which performed a functional capacity evaluation. HealthSouth evaluators, including a physical therapist, noted that Ribaudo had "functional lower extremity weakness, low back pain, right buttock pain, as well as right lower extremity symptoms." Specifically, they noted that Ribaudo's strength in his right lower extremity tested at a 3 to 4 Grade on a scale of 5; that Ribaudo experienced pain performing kneeling, squatting, and straight-leg raising exercises; and that his gait was slow and abnormal. However, the evaluators also believed that Ribaudo had not put forth maximum effort during the exam. HealthSouth believed that Ribaudo was capable of lifting twenty pounds occasionally and ten pounds frequently. They also believed that he could sit for up to two hours at a time for a total of up to eight hours in a day and that he could stand for up to two hours at a time for a total of up to four hours in a day. They concluded that he could perform light work.

Finally, Ribaudo was examined by Dr. Spiros Stamelos, an orthopedic surgeon, in June 2000. Dr. Stamelos concluded that Ribaudo had "postoperative fibrosis from a permanent irreversible significant pain secondary to pressure of the nerve roots." He indicated that Ribaudo complained of lower back pain and subjective numbness in the right leg and had a limited range of motion. He also found that Ribaudo had sciatica and nerve damage. He believed that Ribaudo was "not a good candidate to return to work."

Ribaudo applied for benefits in July 2000. His application was denied initially and on reconsideration. Ribaudo then had a hearing before an administrative law judge. The ALJ, applying the familiar five-step analysis, 20 C.F.R.

§ 404.1520(a)(4), found at Step 1 that Ribaudo was not engaged in substantial gainful activity and at Step 2 that Ribaudo had a serious impairment. He then found at Step 3 that Ribaudo's impairment did not medically equal any listing in Appendix 1, Subpart P, Regulation No. 4. The ALJ based his Step 3 finding on Disability Determination and Transmittal forms filled out by the Social Security Administration's non-examining experts which concluded that Ribaudo was not disabled. In determining Ribaudo's residual functional capacity, the ALJ did not completely credit Ribaudo's claims of extreme pain because he found them inconsistent with Ribaudo's testimony that he only took over-the-counter pain medications. Nonetheless, the ALJ found at Step 4 that Ribaudo did not have the residual functional capacity to return to his previous work as a construction worker. However the ALJ, relying on the testimony of a vocational expert, concluded at Step 5 that a person with Ribaudo's limitations could still work in a "bench assembly" job and that there are nearly 40,000 such jobs in the Chicago region. Therefore, the ALJ determined that Ribaudo was not disabled.

Because the Appeals Council denied Ribaudo's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. That decision was affirmed by a magistrate judge who was presiding with the consent of the parties.

## Analysis

Ribaudo first challenges the ALJ's cursory finding at Step 3 that his back injury does not meet or equal a listed impairment. The ALJ's two-sentence discussion of this question said only the following:

> The claimant does not have an impairment which meets or equals the severity criteria of any impairment in the Listings. The Social Security Administration's non-

examining experts [SSR 96-6p], reviewed the evidence of record and opined that the claimant's condition did not medically equal any Listing (see Exhibits 1A-2A, 10F).

Ribaudo argues that these two sentences do not adequately explain the reasoning behind the ALJ's decision. Specifically, he contends that the ALJ should not have rested his decision entirely on the conclusions of the agency's non-examining experts while ignoring other evidence in the record that showed that his impairment met the requirements for Listing 1.04A. This listing includes disorders of the spine such as a herniated nucleus pulposus with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App. 1, 1.04A. Ribaudo points to reports of Dr. Levin and Dr. Lim which he says show that he meets all of the criteria in Listing 1.04A.

Ribaudo has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). But this court has also held that an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a "perfunctory analysis," may require a remand. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

We agree with Ribaudo that the ALJ did not provide a sufficient analysis of the Step 3 question. What is troubling is that the ALJ, in addition to not mentioning Listing 1.04A, did not evaluate any of the evidence on its

required criteria that is favorable to Ribaudo. For instance, as Ribaudo points out, the reports of Dr. Levin and Dr. Lim note that he complained of lower back pain that radiated to his right leg, had a limited range of motion in his spine, and experienced pain during straight-leg raising tests. Dr. Lim's report also notes that he had sciatic pain, which is a specific type of the radicular pain required by Listing 1.04A. *See* 20 C.F.R. Part 404, Subpart P, App. 1, 1.00K3; www.spine-health.com/topics/cd/hurt/h04.html (last visited June 19, 2006). Listing 1.04A requires evidence of sensory loss, and the reports of Dr. Levin cited by Ribaudo indicate that Ribaudo had loss of sensation in his calf area and complained of numbness in his right leg.

In addition, our own review of the record turned up several other pieces of evidence unaddressed by the ALJ that also support Ribaudo's case. For example, Dr. Levin's notes indicated that Ribaudo's nerve roots were compressed, which is another of the requirements of Listing 1.04A. Furthermore, Dr. Stamelos, like Dr. Lim, noted that Ribaudo had sciatica. The HealthSouth records reveal that Ribaudo had difficulty squatting, and Dr. Levin noted that Ribaudo had difficulty walking on his right heel. Inability to squat or to walk on the toes or heels can be evidence of significant motor loss, 20 C.F.R. Part 404, Subpart P, App. 1, 1.00E1, which is yet another of Listing 1.04A's criteria. Finally, Listing 1.04A also says that motor loss can be indicated by muscle weakness, and HealthSouth records show that Ribaudo had lower extremity weakness and that strength tests on certain areas of his lower right extremity resulted in scores as low as 3 on a scale of 0 to 5, 20 C.F.R. Part 404, Subpart P, App. 1, 1.00E1 (explaining that muscle strength should be assessed using a scale of 0 to 5 with 5 being maximum strength).

The agency points out that the ALJ did cite the Disability Determination and Transmittal forms filled out by its non-examining experts which concluded that Ribaudo was not disabled, and that this is all that is required under *Scheck*

*v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004). But that case also makes clear that the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record, *id.*, and here Ribaudo *has* presented contradictory evidence suggesting that his impairment meets Listing 1.04A.

Although the ALJ is not required to mention every piece of evidence in the record, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), his failure here to evaluate any of the evidence that potentially supported Ribaudo's claim does not provide much assurance that he adequately considered Ribaudo's case. *See Brindisi*, 315 F.3d at 786 (criticizing ALJ's failure to discuss conflicting evidence at Step 3 inquiry including the strongest piece of evidence supporting claimant's case). For this reason, the case must be remanded to the Social Security Administration so the agency can conduct a more thorough analysis of the evidence at Step 3.

We also think that the case must be remanded because the ALJ's adverse credibility finding is not supported by the record. Each of the ALJ's reasons for his adverse credibility finding is flawed. First, the record does not support the ALJ's finding that Ribaudo's complaints of severe pain were not consistent with the objective medical evidence. An ALJ's credibility determinations are given special deference, but the ALJ must still "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal citation and quotation marks omitted). The ALJ did not do this here. Although he determined that Ribaudo's complaints of pain were inconsistent with the objective medical evidence, he did not specify what objective medical evidence he was considering, nor is this clear from the record. Further, he never assessed the medical evidence that seems to support Ribaudo's contention that he was in significant pain. For example,

Ribaudo points to the report of Dr. Stamelos, which shows that he had significant scarring from his back surgery as well as sciatica—both conditions that can cause pain. The record also contains an MRI, CT scan, and myelogram showing that Ribaudo had a herniated disc and a later MRI showing that Ribaudo had scar tissue from his back surgery. Finally, Ribaudo frequently experienced back pain during clinical tests, such as straight-leg raising tests.

Moreover, the record does not support the ALJ's discrediting of Ribaudo's complaints of severe pain because of his testimony that he was taking only over-the-counter pain medications. As Ribaudo points out, he explained at his hearing that he did not take prescription pain medications because they did not work, and his doctors did not want him to take ineffective medications. Yet the ALJ never mentions Ribaudo's explanation. Ribaudo's failure to pursue ineffective treatments does not suggest that he is not in severe pain, and therefore cannot be a sound basis for the ALJ's adverse credibility finding. *See Shramek*, 226 F.3d at 813 (ALJ's finding that claimant's complaints of leg swelling were not credible because she refused to wear prescribed elastic stockings not supported by the record because claimant testified that hospital personnel instructed her to remove stockings when they made swelling worse).

Because the ALJ did not adequately explain his Step 3 finding and because his adverse credibility determination is not supported by the record, we VACATE the decision of the district court and REMAND the case to the Social Security Administration.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*