**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued August 8, 2006
Decided October 12, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3755

| | |
|---|---|
| LARRY R. MOGG,<br> *Plaintiff-Appellant,*<br><br>*v.*<br><br>JO ANNE B. BARNHART,<br> *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:04-cv-01446-RLY-WTL<br><br>Richard L. Young,<br>*Judge.* |

## O R D E R

Larry Mogg filed for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"), 42 U.S.C. §§ 416(I), 423, 1382(a)(3)(A), claiming that he suffered from various debilitating ailments. The administrative law judge found that Mogg failed to show that his ailments rose to the level of being disabling under the Act. The appeals council denied Mogg's request for review, and Mogg appealed to the district court, which affirmed the Commissioner's denial of benefits. We vacate and remand because the ALJ did not adequately explain why Mogg's ailments did not meet a disability listed in the Social Security regulations.

In January 2002, Mogg filed for disability insurance benefits and social security supplemental income, claiming that he suffered from osteoarthritis in his knees, degenerative arthritis in his spine, a bone spur on his right shoulder, and an

unspecified "depressive disorder." Mogg's claim was initially denied, and he requested and received a hearing before an ALJ. At the time of the hearing, Mogg was 47 years old, had a high school education, and had worked as a plumber for 22 years in New Castle, Indiana.

Mogg testified on his own behalf to support his claim, stating that his ailments caused knee, back, and shoulder pain which prevented him from lifting more than 20 pounds, and that he was unable to walk without a cane. Even with the assistance of a cane, he asserted, the pain limited him to walking less than 100 feet at once. His knee and back problems prevented him from doing his plumbing job, which often required him to stoop, crawl into tight areas, and work in awkward positions. In all, Mogg claimed that the pain forced him to undertake as little activity as possible.

Mogg supplemented his testimony with medical records that detailed the treatment he sought for his ailments. According to these records, beginning in January 2001 he sought treatment for pain on the right side of his neck and right shoulder. Examinations at that time revealed mild degenerative arthritis in his upper back and mild muscle atrophy in his right arm. Mogg again sought treatment in December 2001 from his primary care physician, Dr. Paul Stricker, this time for pain in his back, shoulder, and knees; an x-ray of the right knee revealed degenerative arthritis. Upon request Dr. Stricker gave to Mogg "a slip stating that he was unable to work" until he could undergo further evaluation on his knee by Dr. Thomas Mathews, an orthopedic surgeon. After this evaluation the only course of treatment suggested for Mogg's right knee was knee replacement, but doctors were hesitant to undergo this procedure because of his relatively young age.

Subsequent consultative examinations confirmed that Mogg suffered from osteoarthritis in his knees. Dr. Qing Jia, a medical consultant who examined Mogg in 2002, stated in a medical report that, even if he used an assistive device, Mogg could not stand or walk for a two-hour period, and probably could not lift or carry ten pounds or less when walking. Likewise, a residual functional capacity ("RFC") assessment completed by the Indiana Family & Social Services Administration stated that Mogg could work eight hours a day only "in a seated position with an occasional standing or ambulatory position." The assessment also stated that Mogg's claims regarding "the functional limitations imposed by these symptoms" were "fully credible because they are reasonably well supported by appropriate medical findings and are not inconsistent with the overall evidence in file."

Dr. Mathews himself completed two RFC assessments during this time. In the first assessment completed in July 2002, he concluded that Mogg suffered from "moderately severe arthritis" in his right knee, and could stand or walk only for a total of two hours during an eight-hour period. Dr. Mathews also concluded that

Mogg could "occasionally" bend, squat, crawl, climb, stoop, balance, kneel, or crouch. In the second RFC assessment completed in June 2003, Dr. Mathews found that Mogg's ailments worsened. Dr. Mathews noted that Mogg suffered from painful osteoarthritis in his knees and degenerative arthritis in his back and neck. Dr. Mathews further opined that Mogg could not stand for more than 45 minutes to an hour, could not climb more than two flights of stairs twice a day, and could not lift more than 20 pounds at a time.

At the hearing, the ALJ solicited the opinion of a medical expert ("ME") who agreed that Mogg suffered from osteoarthritis in the right knee. Despite Mogg's osteoarthritis, the ME stated that Mogg's impairments did not meet Listing 1.02—for a major dysfunction of a weight-bearing joint—because: (1) Mogg did not use a device that required both arms to assist him in walking, and (2) Mogg was functional in activities of daily living. The ME also stated that Mogg did not meet Listing 1.04—for a spinal disorder—because recent examinations revealed no current serious ailment, though he added that Mogg's back ailment could have met the listing when it was first diagnosed.

The ALJ next questioned a vocational expert ("VE") regarding the type of work Mogg could perform despite his ailments. He asked the VE if a "48-year-old man with a high school education, and a residual functional capacity to perform sedentary work" could perform work as a plumber. When the VE replied "No," the ALJ asked what work an individual could do if that individual suffered from Mogg's ailments. The VE replied that the man could perform "sedentary" jobs such as cashier (13,818 jobs available in Indiana), assembler (6,642), truck driver (3,715), inspector (1,489), or hand sorter (207).

In his decision, the ALJ applied the five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v), and found that: Mogg had not engaged in substantial gainful employment since the alleged onset of his ailments (Step One), and that his ailments limited his ability to perform work (Step Two). But the ALJ adopted the ME's conclusions to determine that Mogg's impairments neither met nor were medically equivalent to any medical listing in Appendix 1, Subpart P, Regulation No. 4 (Step Three). The ALJ then determined that Mogg was unable to work as a plumber, but retained an RFC to perform "light work" (Step Four). The ALJ went on to find that there was a significant number of "light, unskilled jobs" that Mogg could perform, including truck driver, assembler, inspector, hand sorter, or cashier (Step Five).

After the Appeals Council denied Mogg's request for review, Mogg appealed to the district court, which affirmed the denial of benefits. In reaching this decision, the district court noted that, even though the ALJ "did not specifically discuss Listings 1.02 and 1.04 in his decision, he did state that the [ME] at the hearing

testified that Mogg's impairments did not meet nor were medically equal to any Listing."

On appeal Mogg challenges the ALJ's Step Three finding that his ailments do not meet or equal a listed impairment; in so concluding, the ALJ stated merely:

> Considering the evidence of record, as summarized above, I conclude that the claimant has impairments of osteoarthritis of the knees, degenerative arthritis of the cervical spine at C3-4 and C5-6, a spur on the right shoulder acromion, and a depressive disorder NOS. The claimant's impairment of mild right carpal tunnel syndrome would not impose any significant limitation upon his ability to work. At step three of the sequential evaluation, the severity of the claimant's impairments, singly or in combination, does not meet or medically equal any one of the impairments listed in Appendix 1 to Subpart P of Regulations No. 4, according to the testimony of the [ME] at the hearing.

Mogg asserts that this conclusion was flawed because the ALJ did not explicitly cite the pertinent Social Security listings—Listing 1.02[1] and Listing 1.04.[2] Mogg adds that the ALJ's analysis "ignored, misstated or rejected all of the other evidence" showing that his ailments met the listings. He points, for instance, to the slip that Dr. Stricker gave him saying that he did not have to work while awaiting further treatment. Mogg also cites Dr. Jia's report, the Indiana Family & Social Services Administration's RFC assessment, and Dr. Mathews's June 2003 RFC assessment, all of which contain evidence supporting his claim that his ailments meet or equal the Social Security listings.

We are limited to determining in disability cases whether the Commissioner's final decision is "both supported by substantial evidence and based on the proper legal criteria." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (internal

---

[1] Listing 1.02(A) states that a dysfunction of lower joints constitutes a disability if it involves "one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively" without the use of a hand-held assistive device(s)—such as canes, crutches, or walkers—that limits the functioning of both arms. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.02(A), 1.00(B)(3)(b).

[2] Listing 1.04(A) states that a spinal disorder qualifies as a disability if there is "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.04(A).

quotation marks omitted). We will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks "an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotation marks omitted). In reviewing Step Three determinations, an ALJ should mention by name the specific listings he is considering; his failure to do so, if combined with a "perfunctory analysis," requires remand. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).

The Commissioner concedes that the ALJ failed to reference the pertinent Social Security listings in its decision, but goes on to assert that the ALJ's omission was harmless because the ALJ referenced the ME's testimony in his findings. According to the Commissioner, because the ME mentioned Listings 1.02 and 1.04 in his testimony, we can "trace" the ALJ's "path of reasoning" to determine what listings the ALJ was referring to, and accordingly discern how the ALJ determined that Mogg's ailments did not meet those listings.

But the ALJ's "path of reasoning" cannot be traced. Not only did the ALJ fail to specify the relevant Social Security listings, his perfunctory Step Three analysis failed to explain why Mogg's ailments did not meet or equal a medical listing. *See Ribaudo*, 458 F.3d at 583. For instance, the ALJ refused to consider Dr. Stricker's slip excusing Mogg from work—solely because Mogg himself had requested it. Yet that slip reflected Dr. Stricker's finding that Mogg could not ambulate effectively due to the degenerative arthritis in his knees—a finding that would support Mogg's claim that his knee ailments met Listing 1.02. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.02(A). Additionally, the ALJ erred by rejecting without adequate explanation Dr. Jia's report, the Indiana Family & Social Services Administration's RFC assessment, and Dr. Mathews's June 2003 RFC assessment—all documents showing that Mogg could not ambulate effectively according to Listing 1.02, and that the movement of his spine was limited according to Listing 1.04. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.02(A); 1.04(A). The ALJ stated that he rejected these documents because they were "not in complete agreement with Dr. Mathews's [July 2002 RFC assessment]." But the ALJ did not articulate: (1) why the evidence had to be "in complete agreement" with Dr. Mathews's July 2002 assessment before he would consider it; (2) why he credited Dr. Mathews over Dr. Jia; or (3) why he thought that Dr. Mathews's more recent report was less relevant or less credible than his older report. *See Brindisi*, 315 F.3d at 787 ("We recognize that even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning. But in this case, the conclusory and conflated analysis prevents this court from finding that substantial evidence supports the ALJ's conclusions." (internal citation omitted)); *Clifford v. Apfel*, 227

F.3d 863, 871 (7th Cir. 2000) (concluding that ALJ failed to "minimally articulate his reasons" for rejecting evidence of disability when he "did not explain why [medical evidence was] necessarily inconsistent with [doctor's] finding regarding the disabling effect of [claimant's] combined hand osteoarthritis and paresthesisas").

Although the ALJ was not required to mention every piece of evidence in the record, *see Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), his failure here to evaluate properly evidence that potentially supported Mogg's claim does not provide much assurance that he adequately examined whether Mogg's ailments met or equaled a Social Security listing at Step Three of his analysis, *see Ribaudo*, 458 F.3d at 583-84, *Brindisi*, 315 F.3d at 786 (criticizing ALJ's failure to discuss conflicting evidence at Step Three inquiry). The decision of the district court is thus VACATED and the case REMANDED to the Social Security Administration so the agency can conduct a more thorough analysis of the evidence at Step Three.