NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted October 5, 2009[*]
Decided October 5, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-4175

| | |
|---|---|
| JACK ZATZ, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 05 C 5233 |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security | Susan E. Cox, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Jack Zatz applied for disability insurance benefits, claiming that he is unable to work because of severe back and leg pain. An administrative law judge ("ALJ") concluded that Zatz is able to perform light work and denied the application. Zatz sought review in the

---

[*]On July 22, 2009, Appellant Jack Zatz filed an unopposed motion to waive oral argument. After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the motion is granted, and the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

district court, and a magistrate judge, presiding by consent, upheld the ALJ's decision. Zatz appeals, and we affirm.

At the time of his administrative hearing in March 2001, Zatz was 52 years old. He had worked as a customer-service agent at United Airlines for over 30 years until September 1999, when he injured himself while lifting heavy luggage onto a conveyor belt. He immediately developed pain in his back and right leg, and an x-ray taken during an emergency-room visit three days later revealed a slight dislocation of his lower spine. Zatz was evaluated the following month by Dr. Richard Rabinowitz, an orthopedic specialist, who diagnosed probable radiculopathy (a disorder of the spinal-nerve roots, *see* STEDMAN'S MEDICAL DICTIONARY 1622 (28th ed. 2006)) and disc herniation and prescribed physical therapy, lumbar epidurals, and an anti-inflammatory drug. When that course of treatment proved ineffective, Dr. Rabinowitz performed surgery in February 2000, including a partial discectomy and excision of a large conglomeration of epidural veins that had been exerting pressure on a nerve root in Zatz's lower back.

At a follow-up appointment with Dr. Rabinowitz later that month, Zatz reported that his preoperative back complaints were "completely gone" but that he was still experiencing weakness in his right quadriceps even though his right-leg pain had shown "mild improvement" overall. The doctor placed him on a 28-session physical-therapy plan and advised him to stay off work for an additional 6 weeks. In April 2000, halfway through his therapy regimen, Zatz reported complete relief of his leg pain, although by then he had already applied for disability benefits. Zatz also reported complete relief of his leg numbness in May but complained of intermittent pain in his interior thighs. Dr. Rabinowitz observed atrophy of Zatz's right quadriceps and decreased motor strength in his right leg, and the doctor recommended continued physical therapy and home exercise and ordered Zatz not to work for an additional four weeks.

In May 2000 a state-agency physician reviewed Zatz's medical file and evaluated his residual functional capacity. The doctor noted that Zatz was recovering from surgery and concluded that by September 2000 he would have the capacity to perform medium work. Specifically, the doctor opined that Zatz would be able to occasionally lift up to 50 pounds, frequently lift 25 pounds, stand and/or walk and sit for a total of 6 hours in an 8-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. A second state-agency physician reviewed Zatz's file and concurred with this assessment.

In June 2000 Zatz saw Dr. Rabinowitz again and reported that he continued to have right-thigh pain and that his lower-back pain had returned. Dr. Rabinowitz observed in his notes that an MRI showed evidence of epidural fibrosis (formation of fibrous tissue as a reparative or reactive process, *see* STEDMAN'S MEDICAL DICTIONARY 726 (28th ed. 2006)), and

spondylolisthesis (slippage of one vertebra onto another, *see id.* at 1813). The doctor recommended home exercise and authorized Zatz to return to work with a lifting restriction of 20 pounds and a limitation to 6-hour workdays for the next 4 weeks. In August 2000 Zatz saw Dr. Rabinowitz again and reported that his back pain had improved dramatically and he no longer had right-leg pain but that he had weakness in his right quadriceps. The doctor authorized him to return to work on a "light duty basis."

Zatz continued to report improvement in his back pain, but in October 2000 he complained of weakness and numbing pain in his right thigh and intermittent symptoms in his left thigh. Dr. Rabinowitz referred Zatz to neurologist Donald Kuhlman, and at his first consultation in November 2000, Zatz reported that he was walking up to five miles daily, though his leg tended to "give out" once or twice per mile. Dr. Kuhlman opined that Zatz's pain was probably the result of prolonged compression by the vascular anomaly that had been removed during his surgery. Dr. Kuhlman evaluated Zatz again in February 2001 and reported "dramatic improvement" in Zatz's lower-extremity pain with regular use of the drug Neurontin (an antiseizure medication also used to treat neuropathic pain).

At the hearing before the ALJ, Zatz testified that he had not worked since injuring his back. He reported constant lower-back pain but conceded that the Neurontin was "working pretty well" and usually took away some of his leg pain. Zatz testified that he can sit continuously for 30 minutes but then has to stand for 15 minutes before he is able to sit again. He also said that he can stand for 2 hours without a break and lift up to 20 pounds, but can bend only with difficulty and cannot squat at all. Zatz reported that he did leg-strengthening exercises and walked roughly 30 minutes each day before the pain became too great. He testified that he grooms himself without difficulty and is able to do chores such as dusting, sweeping, making the bed, shopping at the grocery store and mall, and vacuuming for short periods. When the ALJ asked Zatz how he spends his days, he reported that he shuttles his 9- and 11-year-old children to school and extracurricular activities, reads, works on his computer, watches television, visits friends, and runs errands. Finally, he testified that United Airlines will not allow him to return to his job with a limitation for light work, that he has never performed office work, and that he probably could perform a job where he "could just sit for 30 minutes and then get up and do something else and then come back later and sit."

The ALJ, applying the five-step analysis for evaluating disability, *see* 20 C.F.R. § 404.1520(a)(4), concluded, first, that Zatz had not engaged in substantial gainful employment since the onset of his alleged disability. The ALJ next determined that Zatz's impairments, although severe, did not meet or equal the requirements of any listed impairment. The ALJ then assessed Zatz's residual functional capacity and concluded that he has no limitations other than an inability to lift over 20 pounds. The ALJ acknowledged

that Zatz cannot return to his job as an airline customer-service agent because that position requires lifting more than 20 pounds, but, the ALJ found, Zatz can perform light work. Finally, given Zatz's age, high-school education, and residual functional capacity for light work, the ALJ concluded that he is not disabled under the Commissioner's Medical-Vocational Guidelines, *see* 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.2. The Appeals Council denied review in July 2005, and the district court affirmed in October 2008.

When the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Our review is deferential, and we will uphold the ALJ's decision so long as it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Zatz first challenges the ALJ's determination at step three of the five-step analysis that his condition does not meet or equal the requirements of a listed impairment. In explaining his conclusion at step three, the ALJ wrote:

> The claimant suffered a back injury in September 1999, and continues to suffer some residuals of that injury. However, although severe, his impairments do not meet or equal the requirements of any impairment listed in Appendix 1 to Subpart P of the Regulations (20 CFR Part 404). The medical evidence does not include signs and findings satisfying all of the criteria of any section in Listing 1.01 for musculoskeletal impairments so disability cannot be established under section 404.1520(d) of the Regulations.

We have cautioned that an ALJ should mention the specific listings he is considering at step three, *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), and Zatz thus faults the ALJ for referencing only Listing 1.01 (the title heading for the general category of musculoskeletal impairments) but not Listing 1.04 (the subheading for disorders of the spine). According to Zatz, if the ALJ had specifically examined Listing 1.04, he would have "found some compelling correspondences" between that listing and Dr. Rabinowitz's preoperative evaluation of his condition.

The argument is without merit. When an ALJ fails to cite any listed impairment and provides only a perfunctory analysis, there is little basis for meaningful judicial review and remand therefore may be required. *See Brindisi v. Barnhart*, 315 F.3d 783, 785-86 (7th Cir. 2003). But an ALJ's failure to explicitly refer to a particular listing does not require automatic reversal, especially where, as here, the ALJ's consideration of the listing is

apparent from the record. *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) (declining to remand because, although ALJ did not specifically reference purportedly relevant listing, vocational expert and applicant's attorney had both discussed that listing and parties agreed it was the only potentially applicable listing). Here, although the ALJ did not mention Listing 1.04, he explained that the medical evidence did not satisfy the criteria of "*any* section in Listing 1.01," indicating that he considered all of that category's sublistings, including 1.04.

In any event, Zatz has the burden of proving that his condition meets or equals each criterion of a listed impairment, *see Ribaudo*, 458 F.3d at 583, but he has told us only that there are "compelling correspondences" between Listing 1.04 and Dr. Rabinowitz's preoperative diagnosis. Listing 1.04 refers to several disorders including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fractures, but Zatz has not specified which of these impairments resembles his own. And although Zatz seems to assert that the presence of an "epidural ventral mass" noted in Dr. Rabinowitz's preoperative assessment might be the equivalent of an impairment described in Listing 1.04, that mass was removed during surgery, so we cannot see how the comparison would help him.

Zatz next challenges the ALJ's conclusion that he has the residual functional capacity required to perform light work. A job qualifies as light work when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967. To perform the full range of light work, a claimant must be able to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday, lift up to 20 pounds, and frequently lift or carry objects weighing up to 10 pounds. *Id.*; SSR 83-10, 1983 WL 31251, at *5-6. Zatz argues that the ALJ failed to scrutinize all of the evidence in the record and did not comply with Social Security Ruling 96-8p, which instructs ALJs to assess a claimant's work-related abilities on a "function-by-function basis" before classifying his residual functional capacity in exertional terms (e.g., "light work"). *See* SSR 96-8p, 1996 WL 374184, at *1. Zatz's interpretation of SSR 96-8p would require an ALJ to provide a narrative discussion assessing the applicant's capacity to perform every single work-related function, including sitting, standing, walking, lifting, carrying, pushing, pulling, stooping, climbing, reaching, handling objects, seeing, hearing, speaking, and understanding instructions. If this interpretation was correct, the ALJ's decision would fall short because he did not specifically address Zatz's ability to perform each and every work-related function. Instead, the ALJ considered the medical evidence and concluded that Zatz's only limitation is the inability to lift or carry over 20 pounds.

Although the ALJ could have been more explicit in his findings, his duty under SSR 96-8p is not as onerous as Zatz suggests. A function-by-function assessment of an

individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work. *See* SSR 96-8p, 1996 WL 374184, at *4. But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003); *cf. Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) (remanding where ALJ failed to provide specific assessment of applicant's capacity to stand, walk, push, or pull despite conflicting medical evidence about those functions).

Zatz testified that he walks 30 minutes each day for exercise and can lift up to 20 pounds without difficulty, stand for 2 hours at a time without a break, and sit with intermittent breaks. Although he testified about back and leg pain, he also said that his medication works "pretty well" and that he spends his days exercising, working on his computer, visiting friends, doing errands such as cleaning, grocery shopping, and going to the mall, and driving his children to their extracurricular activities. The ability to perform minimal activities is not necessarily inconsistent with disabling pain, but Zatz's daily tasks are more than minimal. *Compare Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (observing that washing dishes, helping children prepare for school, doing laundry, and making dinner are "minimal" activities), *and Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (concluding that applicant's activities were not inconsistent with disabling pain where she performed only two hours of chores daily with husband's assistance and breaks for rest, shopped for groceries three times a month, played cards twice a month, and could walk only three to five blocks without resting), *with Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) (doubting whether daily schedule of home exercise, grocery shopping, laundry, driving, and walking a mile could be characterized as "minimal"), *and Scott v. Sullivan*, 898 F.2d 519, 524 & n.6 (7th Cir. 1990) (noting that applicant's capacity to perform household chores, carry groceries, ride a bike, hunt and fish was inconsistent with disabling back pain). Further, Dr. Rabinowitz had approved Zatz's return to light-duty work in August 2000, and Dr. Kuhlman, the most-recent doctor to evaluate Zatz, noted in February 2001, the month before the hearing, that Zatz was "doing well" and had reported "dramatic improvement" in his pain.

Zatz has not pointed to any evidence undermining the ALJ's conclusion that he has no limitations other than the inability to lift more than 20 pounds, nor does he even specify what particular functions the ALJ should have, but did not, explicitly assess. The ALJ built an "accurate and logical bridge" from the evidence to his conclusions, *see Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (internal quotations marks and citation omitted), and we are satisfied that his decision is supported by substantial evidence.

AFFIRMED.