NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2009
Decided December 18, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2129

| | |
|---|---|
| MARY V. HALSELL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 08-CV-3013 |
| | |
| MICHAEL J. ASTRUE, | Byron G. Cudmore, |
| Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Mary Halsell claims that she is disabled by arthritis, shoulder problems, collagenous colitis, and headaches. The Social Security Administration denied her claim for disability benefits at all stages, and a magistrate judge, presiding by consent, upheld the agency's decision. Halsell appeals, asserting numerous errors by the Administrative Law Judge ("ALJ"). Although the ALJ's reasoning is imperfect, we conclude that her decision is supported by substantial evidence.

## I. Background

Halsell, a high-school graduate born in 1954, spent 12 years managing fast-food restaurants in Texas. In January 2005 she quit her job and, soon after, moved to Illinois. Halsell applied for disability benefits in March 2005, claiming that she was unable to work

because of cellulitis in her throat (which appears to have been treated successfully) as well as pain in her left knee and right shoulder. The record contains no medical evidence that predates her application apart from documents regarding her treatment for cellulitis.

After Halsell applied for disability benefits, two state-agency doctors examined her. In April 2005 Dr. Raymond Leung observed that Halsell walked with a slow gait and mild limp, had a limited range of motion in her knees and shoulders, and had trouble getting up from a squat. He further concluded that Halsell was obese, weighing 267 pounds and standing 67 inches tall. But Dr. Leung also determined that Halsell could walk 50 feet unassisted, had no difficulty getting on or off the examination table, had no back spasms, and had normal arm grip and strength. In June 2005 Dr. Sandra Bilinsky, the other state-agency doctor, examined Halsell and completed an assessment of her residual functional capacity ("RFC"). Dr. Bilinsky concluded that Halsell could stand, sit, and walk for at least 6 hours in an 8-hour workday, and that she could occasionally lift 20 pounds and frequently lift 10 pounds. Dr. Bilinsky confirmed Dr. Leung's observations regarding Halsell's obesity and walking ability and also found that Halsell had a limited ability to climb stairs, balance, stoop, and reach with her arms.

In September 2005 Halsell first visited Dr. Michael Kirkpatrick, who would become her primary physician, complaining of neck and joint pain, particularly in her hands and knees. An x-ray of Halsell's left knee showed some degenerative change including spur formation but no sign of traumatic injury. Films of her right knee revealed osteoarthritis that was slightly more severe.

In October 2005 Dr. Kirkpatrick referred Halsell to Dr. Ronald Wheeler, an orthopedist, to address the pain in her knees and left shoulder. Dr. Wheeler determined that she needed rotator-cuff surgery to treat impingement syndrome and degenerative joint disease in her left shoulder. Following surgery in December 2005, Halsell regularly attended physical therapy for six months. At the end of that period, the therapist concluded that Halsell had achieved 75% of her goals and had a good prognosis. He recommended that Halsell continue exercising at home.

In July 2006, after her application for benefits had been pending for more than a year, Halsell complained to Dr. Kirkpatrick about pain in her lower back. He examined her and noticed tenderness and some spasticity. An MRI revealed minor degenerative changes between several vertebrae, and Dr. Kirkpatrick diagnosed Halsell with mild central-canal stenosis. In September 2006 Halsell reported that she was unable to walk because of the back pain, so Dr. Kirkpatrick completed a form that Halsell used to apply for a disability-parking permit. That form states that Halsell suffers from osteoarthritic back pain which restricts her ability to walk.

Dr. Kirkpatrick has prescribed pain medications for Halsell since her first visit. For her preoperative shoulder pain, he prescribed Ultram, which Halsell reported was not strong enough. For her back pain, Dr. Kirkpatrick initially prescribed muscle relaxants, but Halsell said they did not work. By the end of the summer of 2006, Halsell had been prescribed Ultram, Gabapentin, and Amitriptyline combined with over-the-counter Tylenol and anti-inflammatories as needed.

Since applying for benefits, Halsell has complained of two other, unrelated conditions: stomach pain and headaches. In February 2006 she told Dr. Kirkpatrick that she suffered from abdominal pain and diarrhea, so he referred her to Dr. William Birsic, a specialist who performed a colonoscopy and a biopsy. The colonoscopy was normal, but the subsequent biopsy revealed microscopic collagenous colitis. Halsell has had moderate success medicating this condition. Halsell has also expressed discomfort from tension headaches, which she brought to Dr. Kirkpatrick's attention in January 2006. In response he recommended that she continue with the Ultram and Amitriptyline.

After Halsell's application was denied initially, she requested a hearing, which occurred in June 2007. At the hearing she testified that she quit her job in Texas because of health reasons and then moved to Illinois because her children are here. Halsell went on to testify about the symptoms she was presently experiencing, but she did not describe how her condition had changed since she applied for benefits two years earlier. She explained that the residual effects of her left shoulder surgery and an earlier right shoulder surgery limit her arm strength and range of motion. She added that she experiences tingling in her hands and feet, pain in her back that radiates into her legs, constant dull pain in her left leg, sharp pain in her right leg, and arthritic pain in her neck. Halsell also testified that she suffers from debilitating headaches, constant abdominal pain, and frequent diarrhea.

These ailments, Halsell said, limit what she can do on a daily basis. Mostly she stays home watching TV and doing puzzle books. She explained that she cannot drive a car and has difficulty performing simple tasks like putting on her shoes, walking from the couch to the refrigerator, showering, and even holding a newspaper. Halsell testified that she cannot lift more than a gallon of water or raise her arms high enough to shampoo her hair.

At her hearing Halsell rated her pain as an 8 of 10, but acknowledged she was taking only Amitriptyline. She explained that she had stopped taking anti-inflammatories because they were causing blood clots and that she does not take Tylenol because it keeps her awake. Halsell did not mention taking Ultram for pain, even though Dr. Kirkpatrick's records suggest that he was still prescribing it. Halsell acknowledged that she never sought surgical treatment for the pain in her knees but did not explain why she had not.

After Halsell testified the ALJ heard from a vocational expert ("VE").  The ALJ asked, hypothetically, whether Halsell could return to her past work as a fast-food manager if she can lift 10 to 20 pounds to shoulder level but not higher, can stand or walk for 6 hours in an 8-hour day, and can occasionally climb, balance, stoop, kneel, crouch, and crawl.  The VE responded that Halsell could return to her job as a fast-food manager given these parameters.  Additionally, the VE opined that Halsell could perform 75% of light, unskilled positions under these conditions, or she could use her food-service management skills in numerous semiskilled sedentary jobs.  When the ALJ asked the VE if Halsell could work given the limitations Halsell had described in her testimony, the VE opined that she would be unable to perform any job.

The ALJ evaluated Halsell's claim under the required five-step analysis, 20 C.F.R. §§ 404.1520, 416.920 and concluded that (1) Halsell had not worked since February 2005; (2) the osteoarthritis in her knees and spine as well as the her postoperative shoulder conditions constitute severe impairments but her colitis and headaches do not; (3) these impairments do not collectively meet or equal a listed impairment; (4) Halsell has the RFC to perform light work; and (5) based on this RFC, she is able to perform her previous job or other available jobs and thus is not disabled.

The ALJ premised her denial of benefits on an adverse credibility finding regarding "the intensity, persistence and limiting effects" of Halsell's symptoms.  The ALJ thought Halsell was exaggerating her symptoms because she was not on a significant regimen of pain medication, she had not "followed up" with her orthopedist regarding her knees and back, and she continued to participate in a "range of daily activities."  The ALJ further noted that the medical evidence failed to support her testimony regarding the severity and limiting effects of her pain.  Additionally, the ALJ commented that Halsell previously lived in Texas but she "quit her job and moved to Illinois to be near her grandchildren."  Finally, the ALJ commented that no doctor had given an opinion that Halsell was disabled and the parking-placard application was irrelevant.

## II.  Analysis

On appeal Halsell argues that the ALJ committed four errors: (1) she based her adverse credibility finding on assumptions and incorrect interpretations of the evidence; (2) she failed to consider Halsell's obesity; (3) she concluded without sufficient evidentiary support that Halsell could return to her prior work; and (4) she gave the VE an improper hypothetical and then relied on his resulting opinion that Halsell could do light or sedentary work.

The Appeals Council declined to review the ALJ's decision, so that decision is the final determination of the Commissioner of Social Security. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). We evaluate whether the ALJ's decision is supported by substantial evidence without deferring to the district court. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009).

Halsell's first argument concerns the adverse credibility finding. The ALJ concluded that although Halsell's impairments could produce the symptoms she described, her testimony about the "intensity, persistence, and limiting effects of these symptoms" was not credible. That credibility finding is entitled to "considerable deference," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006), if a "logical bridge" connects it to the evidence, *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Halsell offers several valid criticisms of the credibility finding, but we conclude that overall it is supported by substantial evidence.

First, Halsell says that the ALJ improperly drew a negative inference from the fact that she did not seek treatment from her orthopedist regarding her knees or back and that she was not taking pain medication for her headaches. Halsell's point has some traction because it is not apparent that the treatment the ALJ expected Halsell to pursue would have resolved her problems and "failure to pursue ineffective treatment[] . . . cannot be a sound basis for the ALJ's adverse credibility finding." *Ribaudo v. Barnhart*, 458 F.3d 580, 585 (7th Cir. 2006). The ALJ should not have "played doctor" and reached independent medical conclusions about what Halsell should have done to treat these impairments. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Moreover, the ALJ's related conclusion that Halsell was not on a pain-medication regimen is simply incorrect because the record shows that Halsell was prescribed medication for long-term pain management and was taking Amitriptyline, which the ALJ assumed was exclusively a sleep aid but failed to recognize is commonly used for pain management.

Halsell is also correct to fault the ALJ for misstating that "she quit her job and moved to Illinois to be near her family." Though this statement may be innocuous in the abstract, it does conflate Halsell's testimony that she *moved* to be near her family and her testimony that she *quit* her job because of health reasons. Given this statement's placement in the ALJ's credibility determination, it is not surprising that Halsell believes the ALJ relied on this mischaracterization to question her motivation for quitting her job.

Finally, Halsell rightly criticizes the ALJ for concluding that she participates in a range of daily activities. The ALJ did not identify those activities, and the conclusion contradicts much of Halsell's testimony. Although the ALJ may be correct that Halsell

engages in a range of activities, she should have explained why she was disregarding Halsell's testimony to the contrary. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

But Halsell's other objections to the credibility finding are without merit. She argues that the ALJ should have given weight to her successful application for a disability parking placard, but the placard proves nothing unless the disability standard is the same. *See, e.g., Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("[O]rdering of a disability placard adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements . . . ."). Similarly, Halsell assumes that the credibility finding was affected by an incorrect determination that her colonoscopy was normal. Even though the colonoscopy itself was normal, Halsell explains, the biopsy that immediately followed revealed microscopic collagenous colitis. That may be so, but as far as Halsell's medical records show, her colonitis has been effectively managed and was not a contributing factor to her claim of disability.

On balance, the flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that Halsell was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are, *see, e.g. Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), and here the ALJ cited other sound reasons for disbelieving Halsell. First, the ALJ properly relied on Dr. Bilinsky's uncontradicted report addressing Halsell's standing and lifting abilities. Second, the ALJ gave weight to the physical therapist's estimate that Halsell had met 75% of her goals and had a good prognosis after her shoulder surgery. Third, the ALJ was permitted to assume that Halsell, who has always been represented by counsel, was "making the strongest case for benefits," so it was not improper for her to draw a negative inference from the fact that no treating physician opined that Halsell is disabled. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Finally, the ALJ's conclusion that the objective medical evidence does not support the severity of symptoms Halsell describes is well supported. The clinical findings referenced by the ALJ show that the narrowing of Halsell's spinal column is characterized as mild, the arthritis in her knees is minimal, and her colitis appears to be treated with over-the-counter medication. Thus, although the ALJ's reasoning is imperfect, there is substantial evidence supporting her decision to discount Halsell's credibility.

In her second argument on appeal, Halsell contends that the ALJ erred by failing to consider her obesity in combination with her other impairments. The reports of the state-agency physicians put the ALJ on notice that Halsell's obesity could be a relevant factor, and thus the ALJ was required to evaluate how her weight impacted her impairments even if obesity was not itself a severe impairment and even if Halsell did not make explicit arguments on the subject. *Prochaska*, 454 F.3d at 736-37; *Clifford*, 227 F.3d at 873. Halsell

waived this argument by failing to raise it in the district court. *See Skarbek v. Barnhart,* 390 F.3d 500, 505 (7th Cir. 2004); *Shramek,* 226 F.3d at 811. Even if the argument had been preserved, the ALJ's failure to explicitly consider Halsell's obesity would not change the result. The ALJ implicitly considered Halsell's weight when she relied on Dr. Bilinsky's report, which expressly mentions Halsell's obesity, and this implicit consideration is sufficient. *See Prochaska,* 454 F.3d at 736-37; *Skarbek,* 390 F.3d at 504.

Halsell's third argument on appeal is that the ALJ erroneously concluded at step four that she had the RFC to return to her past relevant work. Halsell asserts that although the position of fast-food manager is designated as light work, *see* DICTIONARY OF OCCUPATIONAL TITLES 185.137-010 (4th ed. 1991), her particular job constituted at least medium work. But Halsell misunderstands step four. Even if she could not perform her exact former job, she is not disabled if she "can perform the . . . job duties as generally required by employers throughout the economy." S.S.R. 82-61 (Cum. Ed. 1982); *see also Smith v. Barnhart,* 388 F.3d 251, 253 (7th Cir. 2004); *Brewer v. Chater,* 103 F.3d 1384, 1393 (7th Cir. 1997). Thus, even if Halsell could not return to her old job, that does not mean she lacks the RFC to do light work, which includes a fast-food manager job.

Finally, Halsell argues that the ALJ posed an improper hypothetical to the VE and then relied on his conclusions to find that she could do both light and sedentary work. In particular Halsell faults the ALJ's hypothetical because it omitted her inability to walk more than 200 feet and her collagenous colitis. But the ALJ needed to include only the limitations that were supported by medical evidence in the record. *See Simila,* 573 F.3d at 520; *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). Apart from the parking-placard application, which the ALJ properly discredited, there is no evidence that Halsell could not walk 200 feet. Furthermore, the evidence suggests that Halsell could regulate the symptoms of her colitis. Because the medical evidence does not support Halsell's contentions in these two areas, the ALJ was entitled to disregard them as being not credible. *See Simila,* 573 F.3d at 521. Moreover, the ALJ gave not one, but two hypotheticals to the VE, and in the second hypothetical, the ALJ asked the VE to take into account Halsell's testimony and her medical history. The record indicates that the VE learned of the additional limitations by listening to Halsell's testimony and accounted for them in his response to this second question, where he concluded that under the circumstances Halsell described in her testimony, she would not be able to do even light or sedentary work. Halsell's real problem is not with the hypothetical questions posed to the VE but with the ALJ's decision to discredit her testimony. Because that determination is supported by substantial evidence, the ALJ did not err in her method of questioning the VE, and this argument, along with Halsell's other contentions, fails.

AFFIRMED