NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2009
Decided June 19, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-3389

| | |
|---|---|
| JAY A. KNOX, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 07 C 4165 |
| MICHAEL J. ASTRUE, Commissioner of | |
| Social Security, | Morton Denlow, |
|     *Defendant-Appellee.* | *Magistrate Judge.* |

**ORDER**

Jay Knox seeks review of the denial by an Administrative Law Judge of his application for disability insurance benefits. Specifically, he contests the ALJ's conclusions that his impairments do not meet or medically equal a listed impairment, that his testimony was not credible, and that he retained a residual functional capacity for sedentary work. A magistrate judge, presiding by consent, found that substantial evidence supports the ALJ's decision. We affirm.

In December 2004, Knox applied for disability insurance benefits, claiming an inability to work since that November due to severe back pain. His impairment stemmed

from a 2001 back injury at work, as a result of which he underwent multiple spinal fusions. The ALJ previously had declared him disabled for a closed period from January 2001 to November 2003. Knox was almost 41 years old at the time of injury, single, and living with a young daughter. In his previous work at a fence company, he sawed pipes and drove a forklift. He resumed work in 2004, but was fired that November. He asserts that he was fired because his back pain was interfering with his work. Knox then was offered a job as a welder for Caterpillar, but the offer was rescinded due to his levels of medication.

At the hearing before the ALJ in 2006, Knox described his limitations, including problems climbing stairs, difficulty falling and staying asleep, and an inability to cut grass or ride a motorcycle for more than 20 to 30 minutes. He asserted that the swelling forces him to stop mowing in order to ice his back and use a TENS unit—a machine that sends an electric current through his back. He also stated that his prescribed painkillers affected his ability to concentrate on a job. He asserted that he could work for only an hour or so before his back swelled up, and that even when not working he had to lay down about six times a day. He also made reference to a history of migraine headaches, forgetfulness, and a short temper.

The remaining evidence consisted mostly of medical records. Knox's orthopedic surgeon, Dr. Avi Bernstein, had stated in 2004 that Knox's lower back was at maximum medical improvement. Bernstein suggested that in light of Knox's multiple operations he should not work beyond the medium level and should not lift more than fifty pounds. Dr. Aftab Khan, an internist, examined Knox at the request of the state agency in 2005. Knox was then complaining of constant pain in his lower back, numbness in his extremities, difficulty walking, and migraine headaches. Dr. Khan agreed that Knox suffered from lower back pain and migraine headaches, and noted certain limitations, including complaints of pain when lifting ten pounds and a limp when walking. Dr. Charles Kenney, another state-agency physician, reviewed Dr. Khan's report and concluded that Knox could perform light work.

Knox's medical examination from his application to Caterpillar in 2005 was also in the record. The examining physician, Dr. W.R. Roggenkamp, found that Knox had a good lumbar spine range of motion and could heel-toe walk and almost touch his toes. But the doctor had recommended a number of work restrictions as a result of Knox's significant dosage of painkillers, prompting Caterpillar to rescind its job offer. Then in 2006 another orthopedic surgeon, Dr. Matthew Hepler, had examined Knox and noted that an abdominal hernia was increasing his problems. Dr. Hepler diagnosed Knox with chronic back pain but found no fluid collection in his spine or nerve impingement. He suggested that Knox take anti-inflammatory medication and perform aerobic and core strengthening

exercises.  Also in 2006, Dr. Narayan Tata, a pain management specialist, consulted with Knox about his complaint of an intense, constant back ache.  Dr. Tata cautioned that his pain would continue and possibly worsen and was in favor of his consideration for disability benefits.  He said Knox could not return to his former employment and should seek vocational training at the sedentary or light level.

At the hearing, the only other live witness, Dr. Walter Miller, testified as a medical expert called by the ALJ.  Dr. Miller told the ALJ that Knox could perform sedentary work and probably would be able to do light work if his hernia was repaired.  He noted that Knox had hernia surgery in 2004 but had a recurrence shortly thereafter.  But Dr. Miller had not personally examined Knox, and so the ALJ sent Knox to a neurologist, Dr. Rakesh Garg, after the hearing.  Dr. Garg noted that Knox did not appear to be in severe pain even after driving 40 miles to his appointment and that he had full range of motion in all his joints.  He made no objective findings in support of Knox's complaints of back pain.

The ALJ rendered a decision in October 2006 using the five-step analysis.  At step one, the ALJ found that Knox had not engaged in substantial employment since his alleged onset date in 2004.  At step two, the ALJ found severe impairments of a vertebrogenic impairment and an abdominal hernia.  At step three, the ALJ found that Knox does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  The ALJ then determined that Knox has the residual functional capacity to perform the full range of sedentary work.  He did not find credible Knox's testimony concerning the intensity or effects of his symptoms.  At step four, the ALJ found Knox incapable of performing his past relevant work.  At step five, though, the ALJ found that Knox could perform a significant number of jobs in the national economy.

Knox presents three main arguments: (1) the ALJ failed to correlate the evidence to a listed impairment at step three, (2) the ALJ's credibility determination is patently wrong, and (3) the ALJ did not articulate a function-by-function analysis as part of his RFC determination.

Knox first asserts that the ALJ erred by omitting any reference to a specific listing or any explanation as to why his symptoms do not equal a listing.  He cites *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), for the proposition that a case may be remanded where an ALJ does not mention any specific listing and provides only a "perfunctory analysis" of the evidence. We ordered a remand in *Ribaudo* after the ALJ failed to evaluate any of the evidence that potentially supported the claimant's position.  *Id.* at 584.

Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Ribaudo*, 458 F.3d at 583. Unlike in *Ribaudo*, Knox did not present any medical evidence supporting the position that his impairments meet or equaled a particular listing. *See* 458 F.3d at 583. Two state-agency physicians concluded that Knox's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary. In light of the medical evidence, the ALJ's failure to refer to a specific listing at step three is not a ground for remand in this case. *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004).

Knox next argues that the ALJ was patently wrong to conclude that his account of limitations on his daily activities could not be "objectively verified." He argues that statements he made to his doctors must be credited absent substantial evidence to the contrary. But he cites no authority for this proposition apart from a regulation that defines a claimant's testimony as "evidence." *See* 20 C.F.R. § 404.1512(b)(3).

There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions. *Rice*, 384 F.3d at 371. Moreover, although an ALJ may not simply disregard a claimant's subjective complaints of pain, he may view discrepancies with the medical record as probative of exaggeration. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). In this case, the ALJ acknowledged Knox's description of his back pain and limitations. He also recounted the medical evidence suggesting that Knox could perform sedentary or light work, including lifting up to ten pounds. In light of these discrepancies, the ALJ was not patently wrong to find that Knox had exaggerated his limitations.

Knox also asserts that the ALJ's statement that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons," contravenes SSR 96-7p, which requires an ALJ to give specific reasons for a credibility finding. But the focus of the ALJ's statement is not the "other reasons"—never mentioned by the ALJ—that might have been responsible for Knox's reported limitations. Rather, the ALJ was saying, inartfully perhaps, that in light of the medical evidence he didn't believe Knox was as severely limited as he described. The ALJ went on to compare Knox's testimony to other evidence in the record, including his application for a welder position and findings from the medical expert and examining physicians. The ALJ did not need to speculate about the other potential reasons Knox had for exaggerating the limitations on his activities; the ALJ had only to examine whether those limitations followed from the rest of the evidence.

In addition, Knox asserts that the ALJ should not have considered in the credibility determination his attempt to gain employment as a welder. He cites *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998), for the proposition that there is no inconsistency between claiming to be unable to work and seeking out work at the same time.

Though an applicant may be disabled even if he is currently working—because of an unusually accommodating employer or out of a desperate need—it is appropriate for the ALJ to consider any representations he has made to state authorities and prospective employers that he can work. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). In this case, Knox's application undermined his disability claim in a number of ways. First, he applied for a position as a welder, a more strenuous position than other potential sedentary posts. Second, Knox stated in his application that his back pain was a past—not current—problem and that he did not experience any numbness in his extremities, contradicting what he told other doctors. Most importantly, Dr. Roggenkamp, examining Knox in connection with his application, found that he had good lumbar spine range of motion, could heel and toe walk, squat and duck, and came within an inch or two of touching his toes. Knox was unable to get the job because of his significant doses of medication, but his medical evaluation was generally positive. The ALJ was not wrong to consider this application in his credibility analysis.

Knox next contends that the ALJ's finding of a sedentary residual functional capacity conflicts with several items in the record. He asserts that the ALJ's analysis is therefore unsupported by substantial evidence. *See* 42 U.S.C. § 405(g); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). We disagree.

First, Knox asserts that the RFC determination fails to account for all the impairments presented in his testimony, including migraine headaches. The ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th 2008). Although the ALJ omitted any mention of migraines, the divergent nature of Knox's descriptions of his headaches suggests that the omission was insignificant. At the hearing Knox stated that he had been suffering migraine headaches since age eight, long before working and more than 30 years before the onset of his alleged disability. This history would make the headaches largely irrelevant to the determination of disability, except that Knox testified that they had increased in frequency to three times a week. He did not, however, specify when this increase occurred. In contrast, Knox had told Dr. Khan a year before that he was experiencing migraines about once every two months and had been for two to three years. Even if these two accounts of his headaches can be reconciled, Knox did not assert either at the hearing or during his visit to Dr. Khan that the headaches were

interfering with his ability to work. Thus, although the ALJ's failure to mention the migraines is cause for concern, Knox fails to explain how either account of his migraines would undercut the ALJ's conclusion that he retains the RFC to perform sedentary work.

Next, Knox points out that the ALJ says nothing about the fact that the report received from Dr. Garg, the neurologist who examined him after the hearing at the ALJ's direction, is less detailed than that prepared by Dr. Khan, the state-agency internist. But Knox does not explain how this purported omission is relevant, and it is not: Dr. Khan's findings are not inconsistent with the ALJ's determination that Knox is capable of performing sedentary work. We find no traction in this argument.

Third, Knox argues that the ALJ did not weigh the state-agency physicians' RFC analysis against "treating physicians' statements." He cites 20 C.F.R. § 404.1527(b) for the proposition that the ALJ must consider medical opinions in the case record. However, he does not identify in his brief what "treating physicians" he's referencing, even after being chastised for this omission by the district court. Moreover, the ALJ's proposed limitation to sedentary work is consistent with the most restrictive of the medical opinions offered.

Knox also asserts that the ALJ did not address all of Dr. Tata's report, such as the statements that he had reached maximum medical improvement and that his back pain could worsen. But Dr. Tata, the pain management specialist hired by Knox after he filed his claim, did not rule out sedentary work; indeed, he recommended that Knox seek vocational training so that he could obtain sedentary or even light work. This recommendation is entirely consistent with the RFC determination reached by the ALJ.

Finally, Knox argues that the ALJ erred by failing to perform a function-by-function analysis of his ability to perform daily living and work-related activities. He asserts that social security rulings require a function-by-function assessment. Although the "RFC assessment is a function-by-function assessment," SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient, *see id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that ALJ, when assessing claimant's RFC, need not articulate "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record"); *Scheck*, 357 F.3d at 701 (noting that ALJ need not articulate reasons for accepting medical opinions in the record when he does not reject any countervailing evidence); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (holding that absence of function-by-function analysis in RFC determination did not warrant remand since record made clear that ALJ had implicitly found that claimant was not limited in certain functions). The ALJ satisfied the discussion requirements by

analyzing the objective medical evidence, Knox's testimony (and credibility), and other evidence.  Knox does not draw our attention to any evidence that conflicts with the ALJ's conclusion.  The ALJ need not provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to connect the evidence to his conclusions.  *Rice*, 384 F.3d at 371 (quotation omitted).  We find the ALJ's analysis proper.

**AFFIRMED**.