In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2380

DEBORA GHISELLI,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CV-00354 — **Nancy Joseph**, *Magistrate Judge*.

ARGUED FEBRUARY 9, 2015 — DECIDED SEPTEMBER 16, 2016

Before ROVNER and SYKES, *Circuit Judges*, and WOOD,
*District Judge*.[*]

WOOD, *District Judge*. Debora Ghiselli applied for disability insurance benefits under the Social Security Act, claiming that she was unable to work due to a combination of health

---

[*] Of the Northern District of Illinois sitting by designation.

problems that included degenerative disc disease, asthma, and obesity. After her initial application and her request for reconsideration were denied, an administrative law judge ("ALJ") found that she was not disabled despite her impairments. The district court, reviewing the ALJ's decision pursuant to 42 U.S.C. § 405(g), held that the decision was supported by substantial evidence and thus affirmed it. Ghiselli has now appealed that ruling to this Court, arguing that the ALJ erred by crediting the opinions of state agency medical consultants over that of her treating physician, by improperly determining without adequate explanation that she had the residual functional capacity to perform a range of light work with limitations, and by finding that she lacked credibility based on certain purportedly inconsistent statements.

We agree that the ALJ erred in his consideration of Ghiselli's credibility and therefore her case must be remanded for further proceedings.

## I.

Ghiselli applied for disability benefits on June 16, 2010, alleging disability beginning on October 1, 2007. She asserted that she had been employed as a retail customer service manager, a position she later described as including responsibility for handling customer inquiries and supervising cashiers. She claimed that she was disabled by injuries she suffered at her job on August 6, 2007, when a customer struck her in the back with a shopping cart. Ghiselli's claim for disability benefits was initially denied in October 2010 and, upon her request for reconsideration, denied again in April 2011. She then requested and received a hearing before an ALJ.

The ALJ found that Ghiselli was not disabled after evaluating her claim under the five-step sequential evaluation process detailed in 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ determined that Ghiselli had not engaged in substantial gainful activity from the claimed start of her disability of October 1, 2007 through her last insured date of September 30, 2011. As a result, the ALJ proceeded to the second step, where he was required to determine whether Ghiselli had a severe medically-determinable impairment or combination of impairments. He found that she did suffer from severe impairments, including degenerative disc disease of the lumbar spine with stenosis and facet arthropathy, asthma, and obesity. These impairments, he concluded, limited her ability to perform work activities. Ghiselli's claimed mental impairment of depression, however, was not found not to be severe, as it "did not cause more than minimal limitation in [her] ability to perform basic mental work activities." At step three, the ALJ found that Ghiselli's severe impairments did not meet the criteria for presumptive disability. Thus, he proceeded to the fourth step: assessing whether she was capable of performing her past relevant work.

At this stage, an ALJ must determine a claimant's residual functional capacity, which is her "ability to do physical and mental work activities on a regular basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). To determine Ghiselli's residual functional capacity, the ALJ considered the reports and recommendations of Dr. Marjorie Delo, who began treating Ghiselli shortly after her workplace accident and examined her more than a dozen times between August 2007 and September 2010. When Ghiselli returned to work in September 2007 but reported that pain limited her activity, Dr.

Delo recommended that she limit her work to shifts of no more than four hours. Dr. Delo repeated this recommendation after many of Ghiselli's subsequent treatment visits. Although Dr. Delo observed some deterioration in Ghiselli's back condition from its initial appearance in 2007, she also saw positive signs. In July 2010, she noted that Ghiselli had not been treated for back problems since January 2009 and that she had been successful in using home exercises to "keep her pain at bay." In August 2010, she reported that Ghiselli had "no more than mild lower lumbar tenderness," that she had normal muscle tone, and that her gait showed no signs that she was compensating for pain.

The ALJ also considered reports prepared by Dr. Syd Foster and Dr. Philip Cohen, two state agency medical consultants "trained and familiar with" medical standards under the Social Security Act, who reviewed Ghiselli's records to assess her residual functional capacity. In his report, Dr. Foster observed that Ghiselli reported "severe pain and limited mobility" and impaired ability to sit, stand, or walk for prolonged periods. He further noted that she did have "medically determinable impairments that could cause pain and limited mobility" but nonetheless concluded that "the medical evidence does not support such extreme limitations." For his part, Dr. Cohen found "no indication in the medical records that claimant's functioning is limited by asthma, high blood pressure, or hip pain," and that her statements about her limitations "are not consistent with the medical evidence and are found partially credible."

The ALJ also reviewed the reports of two physicians who examined Ghiselli in 2010 and 2011. Dr. Ronald Garcia conducted an electrodiagnostic examination of Ghiselli in

September 2010 and found her to have normal strength, sensation, muscle tone, range of motion, and reflexes in her legs. Dr. Harry Tagalakis administered a magnetic resonance imaging, or MRI, scan of Ghiselli's lumbar spine in August 2011 and characterized her spinal impairments as mild to moderate.

In summarizing his assessment of the various doctors' reports, the ALJ assigned "significant weight" to the opinions of Dr. Foster, Dr. Cohen, Dr. Garcia, and Dr. Tagalakis. As to Ghiselli's treating physician, the ALJ stated: "I generally give weight to Dr. Delo's opinions, but find that her continued restriction to 4-hour work days stems from an unsuccessful attempt to return the claimant to work in September 2007 one month after the initial injury (citation omitted) and there is no medical basis in 2011, four years later, to continue that restriction."

The ALJ's assessment of Ghiselli's residual functional capacity also relied upon her own statements regarding her ability to work, which the ALJ found to lack credibility. He noted that Ghiselli had reported that, among other basic activities, she could do light housework, read, take care of her pets, perform personal care activities, drive her car, and shop for groceries. From this, he concluded that Ghiselli's "ability to perform significant activities of daily living is strong evidence that she is capable of performing work activities, undermining her claims in this case."

The ALJ also felt that Ghiselli's credibility was damaged by what he considered inconsistent statements. For example, he noted that Ghiselli had stated in her January 2010 written "Function Report" that Dr. Delo had restricted her to lifting no more than fifteen pounds and would not clear her to return

to work until that restriction was lifted; meanwhile, Dr. Delo's restriction actually permitted Ghiselli to lift up to twenty-five pounds and allowed her to work under that restriction for shifts of up to four hours. The ALJ was also particularly vexed by the fact that in November 2008, Ghiselli had advised Dr. Delo that she was looking for a new job, which the ALJ considered "contrary to her contentions in this case that she could not work."

After consideration of this record, the ALJ concluded that Ghiselli had the residual functional capacity to perform a range of light work, if she were provided a sit-stand option that allowed her to be off-task for up to ten percent of the time, required no more than occasional stooping, crouching, balancing, kneeling, or crawling, and subjected her to no more than moderate exposure to extreme cold. He further found that Ghiselli had the residual functional capacity to perform past relevant work. While the past work that she could perform did not include her most recent customer service manager job, the ALJ determined that she did retain the capacity to perform some of her previous jobs, including telephone receptionist and data entry clerk.

Finally, at the fifth and final step in the sequential review process, the ALJ determined that Ghiselli could perform a number of other jobs in the regional economy that constituted substantial gainful activity, such as survey worker, automatic car wash attendant, and ticket taker.

In sum, the ALJ concluded that Ghiselli was not disabled as defined in the Social Security Act at any time during the time period October 1, 2007 and September 30, 2011, and affirmed the denial of her application for benefits. Ghiselli's request for review of the decision by the Social Security

Administration's Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). She sought judicial review in the district court, which affirmed the ALJ's decision. This appeal followed.

## II.

An ALJ determination not reviewed by the Appeals Council and affirmed by the district court receives direct review in this Court. *Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013). The ALJ's decision must be upheld if it is supported by substantial evidence, which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 361–62.

As detailed above, in conducting its disability analysis, the ALJ considered five main inquiries: (1) whether Ghiselli was unemployed; (2) whether she had a severe impairment; (3) whether the impairment met or medically equaled one of a list of specific impairments in the regulations accompanying the Social Security Act; (4) whether she was unable to perform her former occupation; and (5) whether she was unable to perform any other work. As the claimant, Ghiselli had the burden of proof for the first four inquiries; the Commissioner had the burden of proof for the fifth. *See Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999). The ALJ found that Ghiselli was not employed, that she had severe impairments, and that those impairments did not meet or equal those listed in the applicable regulations. The parties do not dispute the findings on those first three inquiries. With respect to the remaining two, Ghiselli contends that the ALJ erred in several ways.

Ghiselli contends that the ALJ should have afforded conclusive weight to the opinion from Dr. Delo, her treating physician. She claims that Dr. Delo restricted her to a work shift of no more than four hours, and a person who cannot work eight hours a day, five days a week, or the equivalent, is disabled. *See Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). Indeed, a treating physician's medical opinion is entitled to controlling weight in the disability analysis if it is "well supported by objective medical evidence and consistent with other substantial evidence in the record." *Id.; see also Loveless*, 810 F.3d at 507 ("A treating physician's opinion is entitled to controlling weight unless it is inconsistent with the other substantial evidence.") (citing 20 C.F.R. § 404.1527(c)(2)). A treating doctor's opinion may be properly discounted, however, if it is based upon the claimant's subjective complaints rather than objective medical evidence. *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008); *White v. Barnhart,* 415 F.3d 654, 659 (7th Cir. 2005).

The notes of Ghiselli's initial post-accident treatments do not suggest that a medical diagnosis of her condition mandated a restriction from full-time work. She was first examined by Dr. David Madenburg on August 9, 2007. His notes show that she was cleared to return to work on the same day with the restrictions that she alternate between sitting and standing every two hours, that she stand for no more than twenty percent of her shift, that she walk for no more than thirty minutes, and that she lift no more than ten pounds. Dr. Madenburg's notes do not recommend any restriction on the duration of her shift.

Dr. Delo saw Ghiselli less than a week later on August 13, 2007. Her treatment notes reflect a plan that Ghiselli return to

work on "light duty," with a lifting restriction of no more than
ten pounds and a prohibition on squatting and bending. Like
Dr. Madenburg's notes, the notes from Dr. Delo's initial
treatment of Ghiselli make no reference to any restriction on
the length of her shift upon her return to work. After a
September 28, 2007 examination, Dr. Delo reported that
Ghiselli's sacroiliitis and lumbar degenerative disc disease
were improving, but "[t]he patient does not feel she is able to
work. She did do a trial of 4 hour return to work previously
and the patient's symptoms restarted, so this time we will
keep her out of work for the next 7 to 10 days and re-evaluate
at that time. I hope to return her at that time to a 4-hour shift."
Ghiselli visited Dr. Delo again on October 11, 2007. The
treatment notes from that date state that "[t]he patient
previously seemed to improve; however, at this time she
states that she is no longer getting improvement and does not
feel that she is able to return to work." At that time, Dr. Delo
decided that Ghiselli could not be cleared to return to work
until after she was evaluated by a pain management
specialist, Dr. Randall Nemerovski. Ghiselli saw Dr.
Nemerovski in December 2007 but, for non-medical reasons,
elected to delay the treatment he suggested. Thereafter, Dr.
Delo began recommending a four-hour shift limit. She
examined Ghiselli on January 3, 2008 and her report of the
visit, in a section headed "Return To Work Capabilities,"
included "4 hr shift" along with the directive that Ghiselli
alternate sitting and standing and refrain from lifting more
than twenty pounds or walking more than fifteen minutes at
a time. The notes do not link the restrictions to any medical
diagnosis. Subsequent notes regarding restrictions are
similarly unaccompanied by any reference to objective
medical evidence.

On this record, Dr. Delo's routinely-repeated restriction to a four-hour shift does not constitute an opinion well-supported by objective medical evidence that Ghiselli's medical condition prevented her from working on a full-time basis. The record reveals little support for the effects from which Ghiselli claimed to suffer other than her own subjective complaints. And the other medical opinions reviewed by the ALJ did not find an objective medical basis for the debilitating effects she reported. Thus, we cannot find that the ALJ erred in declining to give Dr. Delo's shift restrictions conclusive weight on the question of Ghiselli's disability. *Ketelboeter*, 550 F.3d at 625.

But the absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts. To the contrary, an ALJ "must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain." *Moore*, 743 F.3d at 1125; s*ee also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The ALJ considered Ghiselli's subjective accounts of her pain and found them not credible. His credibility determination was based in part on his conclusion that Ghiselli could successfully perform numerous life activities. But without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use Ghiselli's successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible. *See Moore*, 743 F.3d at 1126; *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). As this Court has previously explained, "the critical differences

between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson*, 671 F.3d at 647 (also collecting cases); s*ee also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (finding that the ALJ improperly based his adverse credibility determination on, among other things, the claimant's ability to care for herself and her grandchildren); *Roddy*, 705 F.3d at 639 (observing that "[w]e have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate to an ability to work full-time"). The ALJ failed to acknowledge and account for those crucial differences with respect to Ghiselli, or at least there is no indication in the record that he did. Nor did he identify a basis for his conclusion that the life activities Ghiselli reported were inconsistent with the physical impairments she claimed.

The ALJ's focus on the inconsistency he perceived between Ghiselli's claim of disability and her November 2008 statement to Dr. Delo that she was looking for another job, which he described as the most significant of her inconsistent statements, suffers from a similar logical defect. There is no inherent inconsistency in being both employed and disabled. *See Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir. 1995) ('The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be law or altruistic."). And here, Ghiselli was not actually working but merely said that she was looking for work. While a claimant's statements in applying for work following a disability claim might be relevant to her credibility when the statements

undermine the basis for her claim, such is not the case here. Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition. In any case, the ALJ here provided no support for his conclusion that looking for a new job was inconsistent with Ghiselli's disability claim. This is not a situation where the claimant told prospective employers that her pain issues were in the past or otherwise denied suffering from the symptoms that formed the basis for her disability claim. *See, e.g.*, *Knox v. Astrue*, 327 Fed. Appx. 652, 656 (7th Cir. 2009).

Although an ALJ's credibility determinations are generally entitled to deference, this Court has "greater freedom to review credibility determinations based upon objective factors or fundamental implausibilities, rather than subjective considerations" such as the claimant's demeanor. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). The ALJ's unsupported judgments regarding Ghiselli's ability to perform the activities of daily living and her statement that she was looking for a new job are not the sort of credibility determinations entitled to deference.

As the main factors identified by the ALJ as informing his negative assessment of Ghiselli's credibility were either improperly analyzed or unsupported by substantial evidence, the determination itself must be considered patently wrong. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). We cannot deem the error harmless, as it informed several aspects of the ALJ's findings with respect to Ghiselli's residual functional capacity and consequently her ability to perform past relevant work or to adjust to other work.

Ghiselli's case must therefore be remanded to the agency for further proceedings.

In light of the remand, one additional argument raised by Ghiselli merits brief attention. She faults the ALJ for failing to explain how he determined that she would be off-task for no more than ten percent of the workday while changing positions as frequently as required by her work limitations. While we tend to agree with the district court that any such deficiency in the ALJ's decision was a harmless error, on remand the agency should take care to ensure that it builds a logical bridge from the medical evidence to its conclusions, *see Pepper*, 712 F.3d at 362, regarding this (and any other) limitation attendant to its residual functional capacity determinations.

## III.

For the reasons stated above, the judgment of the district court is VACATED and the case REMANDED with instructions to remand the case to the Social Security Administration for further proceedings consistent with this opinion.