**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 1, 2020[*]
Decided July 27, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3207

| | |
|---|---|
| GARY L. HAPNER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, South Bend Division. |
| *v.* | |
| | No. 3:18-cv-00360-PPS-MGG |
| ANDREW M. SAUL, Commissioner of | |
| Social Security | Philip P. Simon, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Since February 2015, Gary Hapner has been seeking disability insurance benefits and supplemental security income from the Social Security Administration. He asserts that he has been disabled for some time: initially, he claimed an onset date of May 12,

---

[*] We granted the parties' motion to waive oral argument, after we examined the briefs and record and concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and record. See FED. R. APP. P. 34(a)(2).

2012, but he later moved that up to January 16, 2015. After the state agency denied his applications, he had a hearing before a Social Security administrative law judge. There, too, he was unsuccessful, and even though he secured a full review from the Appeals Council, the result remained the same. The district court found that the agency's decision was supported by substantial evidence and so upheld it. We do the same: it was up to the agency to weigh the conflicting medical opinions in the record; the ALJ's assessment of Hapner's residual functional capacity was consistent with the credited opinions; and the agency had no duty to pursue Hapner's additional theories.

**I**

Hapner based his claim of disability on a number of conditions: left-hand nerve pain, arthritis, trigger finger, depression, and anxiety. Later, he also argued that he had a bilateral upper extremity neuropathy (roughly, nerve problems in both of his arms). He saw numerous doctors over the years for these conditions. We summarize this treatment, because the details are ultimately not relevant.

Complaining of left-hand pain, Hapner began seeing Dr. David Cutcliffe, an orthopedic surgeon, in October 2013, after he cut his hand on a saw. The cut may have affected his ulnar nerve. Dr. Cutcliffe treated him for a couple of months, giving him injections for his wrist pain and performing a left carpal tunnel release. At the end of December 2013, Hapner was cleared to return to work with some restrictions (*e.g.*, no lifting over two pounds, no firm gripping, no repetitive motion). Around that time, he began occupational therapy with Deb Imbody. On January 21, 2014, however, he saw Dr. Cutcliffe again, complaining of trouble with his left thumb. Dr. Cutcliffe concluded that there was nothing more he could do. The doctor's exit statement indicated that Hapner had impairments of five percent of the left thumb, two percent of the hand and upper extremity, and one percent of the body as a whole.

On April 1, 2014, Hapner saw Dr. Larry Allen, a family practitioner; this time Hapner was complaining of a lump on his hand and pain on his left side. The doctor did not change Hapner's medications at that time. A week later on April 8, Hapner saw Dr. Martin Saltzman, another orthopedic surgeon, for his constant left wrist pain. At that visit, Dr. Saltzman prescribed Norco for the pain but did not otherwise intervene. At a visit on May 8, 2014, Dr. Saltzman diagnosed Hapner with tenosynovitis and prescribed Meloxicam for him. Shortly thereafter, Hapner had an appointment with Dr. Steve Schrock, another family physician, for the left wrist pain and the mass.

Hapner saw a third family physician, Dr. James Mulry, on September 12, 2014. This time he complained that his right fingers did not work in the morning and his right thumb was numb. Dr. Mulry detected a variety of problems, including left-hand tenderness, restricted and painful range of motion, diminished grip and sensation, and trigger finger. He prescribed the opioid Percocet and the antibiotic Zithromax and opined that Hapner would always need these drugs. Hapner saw Dr. Mulry a few more times—on November 21, 2014, February 9, 2015, May 5, 2015, and June 19, 2015. After the last of those appointments, Dr. Mulry noted that Hapner's hands were weak and that he had bilateral, painful Tinel's sign (meaning irritated nerves associated with carpal tunnel syndrome). He wrote that Hapner was "effectively totally disabled now— probably permanently." This opinion is central to Hapner's appeal.

Dr. Mulry was far from the last physician to examine or treat Hapner. Hapner attended a consultative examination with Dr. R. Gupta in March 2015. Dr. Gupta had a more positive view of Hapner's capabilities, concluding that Hapner had full range of motion, normal strength, and no atrophy in his arms. A state-agency physician, Dr. David Everetts, reviewed the records and opined that Hapner could perform a reduced range of medium work with certain limitations. Orthopedic surgeon Dr. Leamon Williams saw Hapner in May 2015 and concluded that Hapner would benefit from surgery. He performed an A1 pulley release operation on Hapner's right hand. The procedure was largely successful, though Hapner continued to drop things, causing Dr. Williams to think that Hapner might have a neuropathy.

In July 2015, Hapner saw another consultative examiner, Dr. Kyung Yang, whose evaluation was largely positive. After a records review in August 2015, Dr. Richard Wenzler came to much the same conclusion. Finally, in the fall of 2016, Hapner was treated for severe swelling, but he was not complaining about his hands, wrists, or fingers at that point.

## II

Hapner's hearing before Administrative Law Judge Steven J. Neary took place by video on January 27, 2017, with Hapner in Elkhart, Indiana, and the judge in Fort Wayne. Applying the familiar five-step evaluation, see 20 C.F.R. § 404.1520(a) and § 416.920(a), ALJ Neary concluded that Hapner was not disabled for purposes of either type of benefits he sought. At Step 1, he found that Hapner met the insured-status requirements of the Act and had not engaged in substantial gainful activity since his revised onset date. For purposes of Step 2, he found that Hapner had these severe impairments: "mild degenerative changes in the fingers of the right hand; history of

carpal tunnel release; history of thumb laceration; and, history of trigger fingers, with release surgery … ." He did not include several other ailments Hapner presented, such as cardiac problems, gastrointestinal issues, headaches, or mental impairments. At Step 3, the ALJ considered whether Hapner met Listing 1.02 (Major dysfunction of a joint(s) (due to any cause)), but he found that the evidence failed to show that Hapner could not perform fine and gross movements, and so he rejected this. It appears that this is the only listing the ALJ considered, and that Hapner, though represented by counsel, did not suggest any others.

Between Steps 3 and 4, an ALJ must determine the applicant's residual functional capacity, pragmatically defined as "the most you can still do despite your limitations." See 20 C.F.R. § 416.945(a)(1). ALJ Neary found the following residual functional capacity for Hapner:

> … the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: no more than frequent handling bilaterally; no more than frequent fine finger manipulation with the left hand; and, no more than occasional fine finger manipulation with the right hand.

With that established, the ALJ concluded that Hapner could not perform his past relevant work (Step 4), but that there are jobs that exist in significant numbers in the national economy that he can perform (Step 5). The ALJ thus ruled that Hapner was not disabled for purposes of the benefits he sought.

Although the Appeals Council does not often accept this kind of case for full consideration, it did so here, based on the existing record. It adopted the ALJ's findings with respect to Steps 1, 3, 4, and 5, but it found the ALJ's opinion wanting with respect to Step 2 (severe impairments). The first error was the failure to acknowledge that Hapner was obese, and that in his case this was a severe impairment. This error was harmless, however, because the ALJ's residual functional capacity finding "fully account[ed] for [Hapner's] mild obesity."

More importantly, the Appeals Council found that the ALJ had erred by failing properly to take the opinion of Dr. Mulry, a treating source, into account. See 20 C.F.R. §§ 404.1527(a)(2), (c), and 416.927(a)(2), (c). It acknowledged that Dr. Mulry had said that Hapner was "effectively totally disabled and probably permanently," but it chose to give that statement little weight. It offered several reasons for its decision: first, Dr. Mulry had been treating Hapner for less than a year when he drew that conclusion;

second, Dr. Mulry's own treating notes did not reflect such drastic impairments; third, there was a conflict between Dr. Mulry's opinion and that of Dr. Gupta (one of the consultative examiners); and finally, Dr. Mulry had impermissibly attempted to decide an issue reserved to the Commissioner—that is, whether the applicant is totally disabled. With those corrections to Step 2, the Appeals Council affirmed the ALJ's decision to deny all benefits, and the district court upheld its action.

### III

Although we are technically reviewing the judgment of the district court, in reality we look directly at the Commissioner's decision, which we must uphold if it is supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); see 42 U.S.C. § 405(g). Hapner complains about three principal errors: the failure to give controlling weight to the opinion of Dr. Mulry, a treating source; the adoption of a residual functional capacity that was less restrictive than it would have been had Dr. Mulry's view been credited appropriately; and the failure to obtain a qualified medical opinion on the question whether Hapner met Listing 11.14. We address these points in the order Hapner presented them.

If all we had was the ALJ's opinion, we would be inclined to agree with Hapner that there was a failure to grapple with the evidence provided by a treating physician. All the ALJ had to say about Dr. Mulry came from earlier visits. The judge noted, for example, that at various points Dr. Mulry indicated that Hapner did not want disability benefits; that Hapner would likely need certain medications "for life"; that a finger (later treated) was "locked"; and that Hapner's right hand was also impaired. After the last of those, Dr. Mulry referred Hapner to a hand specialist. But the ALJ said nothing about the June 19, 2015, opinion that Hapner was "effectively totally disabled now—probably permanently." Had the ALJ considered that opinion, from a doctor who had been treating Hapner regularly for nine months, this might have changed his evaluation of the other medical opinions in the record.

But in this case, the ALJ did not have the last word for the agency: the Appeals Council did, in an opinion that supplemented that of the ALJ. And the Appeals Council zeroed in on exactly this point: whether proper account had been taken of Dr. Mulry's treating-source opinion. The Council found that the length of the treating relationship was not long enough to justify heavy reliance on Dr. Mulry's assessments. More importantly, the Council found Dr. Mulry's opinion to be inconsistent with other medical evidence in the record. In March 2015, for example, Dr. Gupta, serving as a consultative examiner, found that Hapner had reduced strength in his left hand, normal

grip strength bilaterally, and good fine finger manipulative abilities. The Council also thought that Dr. Mulry's ultimate conclusion in June 2015 was inconsistent with his medical notes from earlier visits. Those notes simply indicated restricted range of motion, tenderness, hand weakness, and diminished grip in the left hand.

Finally, although the Council did not mention this, the ALJ had reviewed the opinions of a number of other physicians whose views were closer to those of Dr. Gupta than to Dr. Mulry. After performing trigger-finger release surgery in May 2015, Dr. Williams noted no residual triggering or locking and nearly full extension in the fingers. Dr. Williams commented that Hapner's pain was "out of proportion to his subjective complaints." Consultative physician Dr. Yang's views matched those of Drs. Gupta and Williams, as did those of state-agency physician Dr. Wenzler. In August 2015, Dr. Wenzler indicated that Hapner could perform a reduced range of light work, with some limitations on pushing, pulling, and handling.

When, as here, there are qualified medical opinions on both sides of an issue, it is the agency's job to decide which ones to credit. The treating-source rule, which applies to this pre-2017 case, does not categorically require acceptance of the treating source's opinion. If, as here, that opinion is outweighed by other evidence in the record, then the agency is entitled to reject it. The Appeals Council's decision not to rely on Dr. Mulry, which supplemented the ALJ's discussion of the other medical providers here, was supported by substantial evidence. That conclusion also disposes of Hapner's second point, which was that the ALJ would have adopted a more restrictive residual functional capacity if Dr. Mulry's views had been credited. Hapner raises no other complaint about the residual functional capacity.

Finally, there is the matter of Listing 11.14. Hapner complains that the Council and the ALJ failed to consider at Step 3 whether his combined impairments either met or medically equaled this Listing. Recall that the ALJ did evaluate Listing 1.02, which addresses "major dysfunction of a joint" from any cause, and found that Hapner did not suffer from any such major dysfunction. Listing 11.14 is about peripheral neuropathy. In order to meet this Listing, Hapner would have to show that he has "extreme limitation" in the ability to use both hands. An "extreme limitation" is defined as "a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements." See Listing 11.00(D)(2)(c).

It is true that neither the ALJ nor the Council discussed Listing 11.14, although as we noted earlier, perhaps this is because Hapner did not direct their attention to it. For present purposes, however, we need not decide whether the ALJ had a duty on his own to identify potentially relevant Listings, or if some burden rests on a counseled applicant to do so. Social Security proceedings are nonadversarial, and the ALJ is presumed to know the law in detail, and so we will not find here that Hapner forfeited this point. But that is as far as we can go for him. Looking at the substance of Listing 11.14 and the evidence in this record, it is plain that the ALJ would have found it not to be applicable. The judge summarized the reports of several physicians who concluded that Hapner did not have significant difficulties with either fine or gross motor movements. In addition, as the district court noted, the same findings that supported the ALJ's rejection of Listing 1.02 suffice to show that Hapner did not meet the criteria for Listing 11.14. As we held in *Knox v. Astrue*, 327 F. App'x 652 (7th Cir. 2009), "[a]lthough an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Id*. at 655.

We conclude that substantial evidence supports the agency's decision that Hapner is not qualified for either disability insurance benefits or supplemental security income. We therefore AFFIRM the judgment of the district court.